**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

HOWARD D. REID,

                          Petitioner,

    - v -                                      Civ. No. 9:04-CV-178
                                                      (TJM/RFT)

ATTORNEY GENERAL OF THE STATE OF NEW YORK,[1]

                          Respondent.

**APPEARANCES**:                                    **OF COUNSEL**:

HOWARD D. REID
Petitioner, *Pro Se*
P.O. Box 8764
Utica, NY 13505

HON. ANDREW M. CUOMO                    ROBIN A. FORSHAW, ESQ.
Attorney General for the State of New York      Assistant Attorney General
Attorney for Respondent
Executive Chambers
The Capitol
Albany, NY 13224

**RANDOLPH F. TREECE**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[2]

On June 4, 1991, *pro se* Petitioner Howard D. Reid was convicted, after a guilty plea, of criminal possession of a controlled substance in the fifth degree. Dkt. No. 7, Robin A. Forshaw Decl., dated June 15, 2004, Ex. J, Plea Tr., dated June 4, 1991, at pp. 27-28. On July 23, 1991, Petitioner was sentenced to one-year term of incarceration to be served at the Oneida County Jail

---

[1] Because the Petition was filed when Plaintiff was no longer in custody, the New York State Attorney General was substituted as the Respondent in this action. Dkt. No. 4 at p. 2.

[2] This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

and was fined $1000. *Id.*, Ex. K, Sentencing Tr., dated July 23, 1991, at p. 5. Additionally, a mandatory surcharge of $152 was imposed and, by the terms of the plea agreement, Reid forfeited $411, the amount of money that had been recovered. *Id.* at pp. 5-6.

Presently, Petitioner seeks a Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254 on the following grounds: (1) his Fourth Amendment rights were violated when the police failed to obtain a warrant to search his home; (2) the conviction was unlawfully obtained without adequate proof, in the form of a lab report, that the substance recovered was cocaine; (3) he was denied effective assistance of counsel; (4) he was not informed of, and therefore denied, his right to appeal; (5) the trial court lacked jurisdiction over him because it did not obtain a lab report; and (6) there are conflicts of interest in the case because at the time Petitioner filed his motions to vacate his conviction, two former prosecutors of the Oneida County District Attorney's Office were sitting judges of the Oneida County Court. Dkt. No. 1, Pet. at ¶¶ 12 A-F; Dkt. No. 3, Am. Pet. at pp. 1-14.[3] For the reasons that follow, this Court recommends that the Petition be **denied**.

## I. BACKGROUND

On April 13, 1991, Petitioner was living with his girlfriend, Yolanda Smith, at 162½ Elmwood Place, located in Utica, New York. Plea Tr. at pp. 21-22. After an altercation with Petitioner, Smith telephoned the police and, upon their arrival, informed them that Reid sold crack cocaine and had some stored in the apartment. *Id.* at p. 23; Dkt. No. 6, Resp't Mem. of Law at p. 2. Smith signed a search and seizure waiver, thereby providing consent to the officers to search the apartment. Plea Tr. at pp. 23-24; Resp't Mem. of Law at p. 2. As a result of that search, the police found, in Reid's bedroom closet, a leather pouch containing five small blue baggies, each containing

---

[3] As directed by the Honorable Thomas J. McAvoy, Senior United States District Judge, Petitioner's Original and Amended Petition constitute the Petition in this action. Dkt. No. 4.

crack cocaine. Plea Tr. at p. 24. The police also recovered a loaded automatic pistol and a police scanner. Resp't. Mem. of Law at p. 2.

Petitioner was charged with criminal possession of a controlled substance in the third and fifth degrees, criminal possession of a weapon in the third degree, and unlawful possession of a radio device. Resp't Mem. at p. 2. He was arraigned on April 15, 1991. Forshaw Decl., Ex. L, Arraign. Tr, dated Apr. 15, 1991. Upon the advice of counsel, Petitioner waived the preliminary hearing scheduled for April 18, 1991. *Id.*, Ex. M, Waiver Tr., dated Apr. 18, 1991.

On June 4, 1991, Petitioner entered into a negotiated plea agreement. Under its terms, Petitioner pleaded guilty to one count of criminal possession of a controlled substance in the fifth degree and agreed to forfeit $411 and pay a $1,000 fine by the date of sentencing in exchange for a definite sentence of one year incarceration in the Oneida County jail. Plea Tr. at p. 2. In the event Petitioner did not pay the fine by the time of sentencing, he faced no worse than an indeterminate term of imprisonment spanning one to three years, to be served in a state correctional facility. *Id.* at pp. 2-3.

During the plea allocution, the court explained at length the grand jury process and told Petitioner that by pleading guilty, he was waiving the right to have his case presented to a grand jury. *Id.* at pp. 4-5. Petitioner told the court that he understood and wanted to waive the grand jury presentation. *Id.* at pp. 5-6 & 8. The court explained the rights that Petitioner was giving up by pleading guilty, ensured that no threats nor promises were made, other than the terms of the plea agreement, to induce Petitioner's plea, and ascertained that the plea was the product of Petitioner's own free will. *Id.* at pp. 11-14. The court then explained that, in accepting the plea, it was relying on the facts as stated in the information and accepting them as true. *Id.* at pp. 21-22. Petitioner then

relayed the following recitation to the court. The substance recovered from his apartment was cocaine, which he kept for his own personal use. *Id.* at p. 22. After a fight with his girlfriend, she allowed the police to search the apartment and, as a part of that search, they discovered the cocaine pouches in his bedroom closet. *Id.* at p. 24. Petitioner knew the cocaine was there because he put it there and knew that the substance in the pouches was cocaine because he used it. *Id.* at pp. 24-25. Furthermore, Petitioner purchased the cocaine and had already used some of it, leaving the remainder in the pouch. *Id.* at p. 25.

The court explained that, if Petitioner went to trial, the prosecutor would have to prove he had constructive possession of the cocaine. *Id.* at pp. 25-27. Petitioner indicated that he still wanted to plead guilty and acknowledged that part of the reason for his plea was that he was charged with criminal possession of a controlled substance in the third degree, a class B felony, and, if convicted, he faced an indeterminate term of incarceration ranging from eight and one-third to twenty-five years in state prison. *Id.* at p. 27. The court accepted Petitioner's plea. *Id.*

On July 23, 1991, the agreed-upon sentence was imposed after Petitioner paid the $1,000 fine and mandatory surcharge. Sent. Tr. at pp. 2-6. After sentence was imposed, the court informed Petitioner that he had "thirty days to appeal the case." *Id.* at p. 6.

Petitioner did not appeal. On or about May 21, 2002, Reid filed his first motion to vacate his judgment of conviction pursuant to New York's Criminal Procedure Law ("CPL"). Forshaw Decl., Ex. A, CPL 440.10/440.20 Mot. to Vacate, dated Apr. 30, 2002. In this collateral attack, Reid claimed that he was denied meaningful representation because his counsel never filed motions, failed to obtain a copy of the lab report, and did not advise him of his right to appeal. *Id.* at pp. 4-5. Petitioner further argued that the search of his room was in violation of the Fourth Amendment

because the police did not obtain a warrant and Smith's consent was invalid. He also claimed that the state court lacked jurisdiction because he was never arraigned and his waiver of indictment was invalid. *Id.* at pp. 5-20 & 25-26. Additionally, Petitioner complained that the prosecution never proved that the substance recovered was cocaine and that documents relating to a lab report constituted "newly discovered evidence." *Id.* at pp. 18-20 & 29-30. Finally, Petitioner claimed that there were *Rosario*[4] and *Brady*[5] violations. *Id.* at pp. 26-28.

The prosecutor opposed Petitioner's motion, arguing that Petitioner received meaningful representation because the negotiated guilty plea spared him the possibility of a sentence in excess of twenty years in prison if convicted of all charges. Forshaw Decl., Ex. B, Carl J. Boykin, Esq., Ass't Dist. Atty, Affirm., dated June 20, 2002. The prosecutor also argued that by pleading guilty, Petitioner waived his right to *Rosario* material, and that, even if the prosecutor did not turn over documents to defense counsel, there was no reasonable possibility the outcome would have been different. *Id.* at ¶ 4. The state court agreed and, on July 8, 2002, denied Reid's motion. Forshaw Decl., Ex. C, Oneida County Court Decision and Order, dated July 8, 2002. The Appellate Division, Fourth Department, denied Petitioner's request for permission to appeal the decision. Forshaw Decl., Ex. D, App. Div. Denial of Leave to Appeal, dated Apr. 1, 2003.

---

[4] *Rosario* material includes any written or recorded statement of a prosecution witness, which must be turned over to the defendant regardless of whether it is favorable to the accused. *People v. Rosario*, 173 N.E.2d 881 (N.Y. 1961); N.Y. CRIM. PROC. LAW §§ 240.44(1) & 240.45(1). Unlike a *Brady* claim, *see infra* note 5, a *Rosario* claim derives solely from a New York State law right, which is more expansive than rights later defined by the Supreme Court in *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny; accordingly, a *Rosario* violation does not establish a federal constitutional violation and therefore not cognizable on federal *habeas* review. *See Mayerhofer v. Bennett*, 2007 WL 1624767, at *5 (N.D.N.Y. June 6, 2007); *see also Lyon v. Senkowski*, 109 F. Supp. 2d 125, 139 (W.D.N.Y. 2000); *Copes v. Schriver*, 1997 WL 659096, at *4 (S.D.N.Y. Oct. 22, 1997).

[5] *Brady* material, as defined under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, includes all evidence which may be favorable to the defendant and material to the issue of guilt or punishment, including exculpatory and impeachment material. *DiSimone v. Phillips*, 461 F.3d 181, 195 (2d Cir. 2006) ("To constitute *Brady* material, the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching.") (internal quotation marks and citations omitted).

On or about March 10, 2003, Petitioner filed a second motion to vacate his conviction. Forshaw Decl., Ex. E, CPL 440.10/440.20 Mot. to Vacate, dated Mar. 4, 2003. Petitioner again claimed that counsel was ineffective for not advising him of the right to appeal and that he was not given *Rosario* material in the form of a copy of the lab report. *Id.* at pp. 2-3. Reid asserted that because there was no lab report produced at the time of the plea, the superior court information to which he pleaded guilty was not properly before the court. Therefore, according to Petitioner, the court lacked jurisdiction over him. *Id.* at pp. 4-6 & 8-13. The prosecutor opposed the motion, claiming that the issues being raised were already adjudicated by the court, and, furthermore, the claims related to matters appearing on the record and therefore should have been raised on a direct appeal. Forshaw Decl., Ex. F, Steven G. Cox, Esq., Ass't Dist. Atty, Affirm., dated Mar. 24, 2003.

In a decision, dated April 1, 2003, the state court denied Petitioner's motion. Forshaw Decl., Ex. G, Oneida County Court Decision and Order, dated April 1, 2003. The court found that the same issues were previously raised and denied in Petitioner's 2002 motion. *Id.* It further found that the facts that "give rise to the instant motion appear on the record" and the claims could have been raised on direct appeal but were not, thereby requiring dismissal of the motion pursuant to CPL § 440.10(2)(c). *Id.*

On April 8, 2003, after his second motion was denied, Petitioner filed a response to the prosecution's opposition to his motion. Forshaw Decl., Ex. H, Reid Resp., dated Apr. 3, 2003. Petitioner asserted that there was a conflict of interest because two judges sitting on the Oneida County Court at the time Petitioner's motions to vacate his conviction were being considered had been involved in the prosecution of his case. *Id.* It is unclear from the record whether the prosecutor or the court responded to this submission.

## II. DISCUSSION

### A. Timeliness of Petition

The sentence and conviction under attack by the present Petition were rendered in June and July 1991, however, the current Petitioner was not filed until 2004. Given the significant lapse of time, the Court must determine whether the Petition was properly or timely filed before this case can proceed.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations on federal *habeas* petitions that begins to run from the latest of several events, including the date on which the challenged state court conviction becomes final, the date upon which an impediment to filing created by State action in violation of the constitution or laws of the United States is lifted, the date on which the asserted constitutional right was newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review, and the date on which the factual predicate of the claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1)(A) - (D).

The Second Circuit has held that for purposes of 28 U.S.C. § 2244, a state conviction becomes "final" when the time to seek *certiorari* to the United States Supreme Court has expired, which is ninety days after the date direct review of the case has been completed by the highest court in the state. *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001); *Williams v. Breslin*, 2004 WL 242447, at *1 (S.D.N.Y. Feb. 11, 2004). The one-year limitation period under AEDPA is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). "This tolling provision 'excludes time during which properly filed state relief applications are pending' but it does not

restart the statute of limitations clock." *Williams v. Breslin*, 2004 WL 242447, at *2 (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)).

Petitioner was sentenced on July 23, 1991, and he did not pursue a direct appeal therefrom. His conviction therefore became final on August 22, 1991, the day the time to seek review from the Appellate Division expired. *See* 28 U.S.C. § 2244(d)(1)(A); N.Y. CRIM. PROC. LAW § 460.10(1). However, because Petitioner's conviction became final before April 24, 1996, the effective date of the AEDPA, he had a one year grace period from that date, or until April 24, 1997, to file a federal *habeas* petition. *Ross v. Artuz*, 150 F.3d 97, 103 (2d Cir. 1998). Petitioner did not file this *Habeas* Petition until February 18, 2004, almost seven years too late.

Had Petitioner filed a post-conviction application while the opportunity to seek *habeas* relief still existed, such application would have tolled the relevant statute of limitations, at least during the pendency of that application. 28 U.S.C. § 2244(d)(2). However, Petitioner is not entitled to tolling because he did not file his first post-conviction motion until May 21, 2002, more than five years after the deadline to file the *habeas* petition had expired. Therefore, the filing of his post-conviction motions did not restart the statute of limitations clock, and Petitioner's *Habeas* Petition is untimely. *Williams v. Breslin*, 2004 WL 242447, at *2; *Davis v. McCoy*, 2000 WL 973752, at *2 (S.D.N.Y. July 14, 2000).

Petitioner proposes two alternate dates from which the one-year limitation period should run. First, Petitioner argues that the factual predicate of at least one of his claims is "newly discovered" and could not have been discovered sooner through the exercise of due diligence. Am. Pet. at pp. 7-8 (citing 28 U.S.C. § 2244(d)(1)(D)); & *Carter v. Connell*, 2007 WL 1526406, at *2 (N.D.N.Y. May 23, 2007)). Second, Petitioner claims that the state "created an impediment, to mislead the

plaintiff into believing" that his conviction was "constitutionally sound." *Id*. at p. 8 (citing 28 U.S.C. § 2244(d)(1)(B)). These two arguments stem from Petitioner's belief that the lab report, which would have established that the substance recovered from his room was cocaine, was either not completed or was not in the court's file. *Id*. at p. 7. Petitioner claims that he first became "curious" about the constitutionality of his conviction sometime in 2001 while serving a sentence on a subsequent, unrelated charge, and began to make Freedom of Information Law (FOIL)[6] requests to obtain his file. *Id*. Petitioner asserts that it was not until February 22, 2003, that he "confirmed" that a lab report was not completed, thereby rendering this information "newly discovered evidence" that directly affected the state court's jurisdiction over him and the validity of his guilty plea. *Id*. at pp. 7-8.

Section 2244(d)(1)(D) only applies to claims for which the factual predicate was not known or reasonably discoverable at the time the petitioner's conviction became final. *Shuler v. Spitzer*, 2007 WL 1704644, at *5 (E.D.N.Y. June 13, 2007). The statute of limitations under this section runs from the time a petitioner is on notice of newly discovered facts that would support his claim, not from the date on which he actually gains possession of evidence to support it. *Hector v. Greiner*, 2000 WL 1240010, at *1 (E.D.N.Y. Aug. 29, 2000) (citing *Ludicore v. New York State Div. of Parole*, 1999 WL 566362, at *5 (S.D.N.Y), *aff'd* 209 F.3d 107 (2d Cir. 2000)). "Evidence in existence at an earlier date, though perhaps unknown to a petitioner, cannot later be described as newly discovered." *Carter v. Connell*, 2007 WL 1526406, at *3 (quoting *Hector v. Greiner*, 2000 WL 1240010, at *1). Petitioner bears the burden of proving that he could not, with due diligence, have discovered the lab report, or lack thereof, prior to February 22, 2003. *United States v. White*,

---

[6] N.Y. PUB. OFF. LAW § 89.

972 F.2d 16, 20 (2d Cir. 1992); *Carter v. Connell*, 2007 WL 1526406, at *3; *Shabazz v. Filion*, 2006 WL 2792741, at *5 (N.D.N.Y. Sept. 26, 2006). He has not met this burden.

The lab report in this case was completed on April 26, 1991 – approximately eight weeks before Petitioner pled guilty. *See* Forshaw Decl., Ex. I, Crime Lab Report, dated Apr. 26, 1991. According to the report, Investigator Briggs sent, by certified mail dated April 18, 1991, five plastic bags that contained a chunky white powder to the New York State Police Headquarters Crime Laboratory, and the substance tested positive for cocaine. *Id*. Since the lab report was completed well before Petitioner's conviction became final, it is not "newly discovered evidence." The presence or absence of a copy of the report in the prosecutor's or court's files, or the fact that Petitioner did not have a copy prior to February 23, 2003, does not change that result. *See Carter v. Connell*, 2007 WL 1526406, at *3. Since Petitioner cannot establish that the lab report was new evidence, Section 2244(d)(1)(D) does not apply.

Similarly, Petitioner has failed to establish that the state prevented him from timely filing his Petition. Under Section 2244(d)(1)(B), the one-year period of limitations runs from "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." 28 U.S.C. § 2244(d)(1)(B). This section "applies if it falls later than the one-year period from the date a conviction becomes final under Section 2244(d)(1)(A)." *Montalvo v. Strack*, 2000 WL 718439, at *2 (S.D.N.Y. Jun. 5, 2000); 28 U.S.C. § 2244(d)(1).

Petitioner has not shown that the state took any action which violated the Constitution or federal law. He claims, without providing any supportive evidence, that the state misled him into believing that his conviction was "constitutionally sound" and that authorities misled him by telling

him that they did not know the "whereabouts" of the lab report. Am. Compl. at p. 8. Reid further suggests that the delay in filing his Petition was caused by the state's lack of response to his FOIL requests. *Id*. "The disclosure obligations of FOIL, however, are not mandated by federal law. They are entirely the creation of state law." *Castillo v. Artuz*, 2000 WL 307373, at *4 (E.D.N.Y. Feb. 15, 2000). Thus, a delay by the state in responding to a FOIL request does not constitute an impediment in violation of the Constitution or federal law that prevents the timely filing of a *habeas* petition. *Gould v. West*, 2007 WL 2323108, at *4 (S.D.N.Y. Aug. 15, 2007). Since Petitioner has not alleged any facts or evidence in support of his claim that the state somehow impeded his ability to timely file his *habeas* petition, Section 2244(d)(1)(B) does not apply to toll the limitations period.

Accordingly, Petitioner's Petition is time-barred and must be dismissed unless equitable tolling applies.

### B. Equitable Tolling

A court may, in certain circumstances, excuse a petitioner's delay in filing a timely petition under the doctrine of equitable tolling. *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 1996); *Bellamy v. Fisher*, 2006 WL 2051038, at *4 (S.D.N.Y. July 24, 2006). The doctrine should be used sparingly and only in rare circumstances. *Lawrence v. Florida*, 127 S. Ct. 1079, 1085 (2007). For equitable tolling to apply, petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id*. (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Belot v. Burge*, 490 F.3d 201, 205 (2d Cir. 2007). A petitioner claiming extraordinary circumstances must support that claim with evidence and not simply with "personal conclusions or assessments." *Bellamy v. Fisher*, 2007 WL 2051038, at *5 (citing *Mendez v. Artuz*, 2000 WL 991336, at *2 (S.D.N.Y. July 18, 2000) for the proposition

that conclusory allegations do not meet the high burden required to justify tolling).  A petitioner must also show that he was unable to pursue his legal rights during the entire period that he seeks to toll.  *Barbosa v. United States*, 2002 WL 869553, at *5 (S.D.N.Y. May 3, 2002).

According to Petitioner, he became curious about his conviction sometime in 2001 and, at that point, he continuously pursued his claims and "diligently filed for relief in the state courts below."  Am. Pet. at p. 7.  He does not offer any explanation for how he was pursuing his rights between April 24, 1997 (the deadline for a timely petition) and 2001.  Thus, Petitioner has failed to establish that he was diligently pursuing his rights during the entire time period that he seeks to toll.  *See*, *e.g.*, *Lawrence v. Florida*, 127 S. Ct. at 1085; *Barbosa v. United States*, 2002 WL 869553, at *5.

Petitioner has also failed to establish that any extraordinary circumstances prevented him from filing his Petition on time.  As noted above, the state's delay in responding to a FOIL request is not a circumstance that would warrant tolling.  Similarly, the inability to secure court documents is not an extraordinary circumstance.  *See Lindsay v. Walsh*, 2007 WL 1704638, at *3 (E.D.N.Y. June 12, 2007); *Thomas v. Walsh*, 2005 WL 1621341, at *3 (S.D.N.Y. July 12, 2005); *Davis v. McCoy*, 2000 WL 973752, at *2.

To the extent that Petitioner argues that counsel was ineffective for not advising him of the right to appeal his conviction, that claim is also insufficient to invoke the equitable tolling doctrine.  As an initial matter, Petitioner's claim that he was not advised of his right to appeal is refuted by the record, which shows that Petitioner was specifically advised at sentencing of his right to file an appeal within thirty days. Sent. Tr. at p. 6.  In any event, Petitioner has not shown, nor is it likely, that the direct appeal process would have tolled the statute of limitations clock for the entire

fourteen-year delay in this case.  Moreover, even if Petitioner made such a showing, attorney negligence is insufficient to create the requisite extraordinary circumstances for tolling.  *See Smaldone v. Senkowski*, 273 F.3d 133, 138 (2d Cir. 2001).

Petitioner took no affirmative action to challenge his conviction or protect his rights during the statute of limitations period and the five years that followed.  Thus, this Court finds that the doctrine of equitable tolling would be inappropriate in this action.  Accordingly, the Petition should be dismissed as untimely filed.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition for a Writ of *Habeas Corpus* be **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:  February 14, 2008
       Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge